CRAIN, Judge.
These matters are consolidated cases arising from an automobile accident occurring on September 12, 1969, in the intersection of North Ardenwood and Choctaw Drive in the City of Baton Rouge. Audrey L. Webster, the plaintiff in one of the suits, was a passenger in a Volkswagen automobile owned by her, and at the time of the accident being driven by her son, David Lee Webster. The other vehicle involved in the accident was owned by defendant, Dalton A. Dixon, and at the time of the accident was being operated by his wife, Ruby M. Dixon.
State Farm Mutual Automobile Insurance Company insured the Webster vehicle, and filed suit as subrogee under the colli *143 sion coverage in the policy against defendants, Dalton A. Dixon and Ruby M. Dixon, and their liability insurance company, Yosemite Insurance Company. Also named as defendants were Barber Brothers Contracting Company, Inc., and East Baton Rouge Parish. East Baton Rouge Parish answered the suit and third partied Barber Brothers Contracting Company, Inc.
In the other consolidated suit, Audrey L. Webster, filed suit for personal injuries in her own behalf and as administratrix of the estate of her minor son, David Lee Webster, against Dalton A. Dixon, Ruby M. Dixon and their insurer, Yosemite Insurance Company, and subsequently by amended petition against Barber Brothers Contracting Company, Inc. and the Parish of East Baton Rouge. The defendants answered and third partied each other and Mrs. Dixon.
We agree with the findings of fact of the trial judge regarding the circumstances of the accident. Choctaw Drive, prior to the accident, had been under construction for some time. Barber Brothers Contracting Company, Inc., had contracted with East Baton Rouge Parish to widen Choctaw so that it could accommodate four lanes of traffic, and the improvements and construction were nearly complete on the date of the accident. Choctaw Drive had been a favored street; however, as different segments of the street were opened after construction was completed, intersecting streets such as Ar-denwood Drive were given the right-of-way.
The testimony indicates that on the date of the accident a driver proceeding west on Choctaw was faced with only one sign. This sign was placed on a barrier which resembled a sawhorse three or four feet in length and a few feet in width. It was located in the center of the street to the left of the inside west bound lane of traffic. There was no corresponding stop sign located at the northeast quadrant of the Ar-denwood Drive intersection to control traffic travelling west on Choctaw.
Mrs. Dixon testified that as she was proceeding west on Choctaw Drive a large tractor-trailer truck was proceeding in the same direction in the inside west bound lane of Choctaw to her left front. As she approached Ardenwood, she noticed that the driver of the truck to her left began putting on his brakes. She testified that she then began searching for traffic control signs and when she saw none, assumed that the truck was merely slowing down to turn left. She then entered the intersection colliding with the left side of the Webster vehicle which was proceeding south on Ardenwood. The stop sign located in the center of the intersection was blocked from her vision by the truck.
David Lee Webster, the driver of the other vehicle, stated that he was very familiar with the intersection in which the accident occurred and that he knew vehicles on Ardenwood had the right-of-way. He testified that he was driving within the speed limit at the time of the accident. At the northeast corner of the intersection was a large building which to a great extent hindered the vision of motorists proceeding south on Ardenwood and heading west on Choctaw. The building was so close to the curb that it was impossible for a driver proceeding south on Ardenwood to see motorists proceeding west on Choctaw until the intersection was entered. He testified that he was unable to avoid the collision.
The trial court found that neither Mrs. Dixon nor David Lee Webster were negligent and that both the drivers used reasonable care and caution prior to the accident. There are sufficient facts, we feel, to support the trial court’s finding.
The trial court found that the cause of the accident was the lack of a stop sign on the right shoulder of Choctaw to warn motorists proceeding west. The trial court further found that the Parish of East Baton Rouge was charged with the *144 responsibility of placing and maintaining traffic control devices, and was at fault in not doing so in this instance. We agree with this conclusion. The records produced by the parish government revealed that the Parish did in fact place two signs at the intersection in question. This was based on a determination that the intersection had become hazardous and needed signing. Regarding placement of signs, the Traffic Engineer testified that “Ordinarily on a four lane street the intersections will have four stop signs, one in the center in each direction and one on each shoulder.” He further testified that the failure to place or maintain a stop sign on the right shoulder would produce a hazardous condition in the intersection. It was admitted that there were parish inspectors who daily traveled to the job site and a project engineer employed by the Parish who remained at all times on the job site. Any of these employees should have noted the missing sign and at least reported its absence to the proper authority. The Parish is held to a high degree of care because of the extremely hazardous conditions produced when control signs are not properly placed. McDaniel v. Welsh, 234 So.2d 833 (1970). This duty was breached herein.
The Parish contends that under the hold harmless provision in its contract with Barber Brothers, it is relieved from liability, specifically referring to the following provisions:
“STREET BARRICADES, SIGNS AND WARNING LIGHTS: The contractor shall furnish standard barricades and construction signs and maintain them throughout the duration of the project until final acceptance is made by the Parish of East Baton Rouge. Signs and barricades shall be required in accordance with the provisions of Section 7, Division I of the Standard Specifications for Roads and Bridges of the Department of Highways, State of Louisiana. The contractor shall assume all responsibility for the adequacy of barricades, signs, lights, etc., that are maintained on the project and shall indemnify and save harmless the Parish of East Baton Rouge, its officials and employees from damage claims, etc., as outlined in Article 7.12 of the above specifications.”
The Standard Specifications for Roads and Bridges provides:
“7.12 Responsibility for Damage Claims: The contractor shall indemnify and save harmless the department, its officers and employees, from all suits, actions, or claims of any character brought because of any injuries or damage received or sustained by any person, persons, or property on account of or in consequence of any neglect in safeguarding the work; or through use of unacceptable materials on constructing the work; or because of any act or omission, neglect, or misconduct of said contractor; . . . ”
We agree with the trial court’s conclusion that “installation and maintenance of traffic control devices” was not part of the operation of the contractor. As stated by the trial court, “The signs inferred to in the indemnity provisions apply to construction signs such as ‘Road closed’ or ‘Detour’ but not to traffic control signals such as ‘Stop’ signs.”
The contract also calls for indemnity if the Parish is liable to third persons because of “any neglect of Barber Brothers in safeguarding the work.” There was no evidence that Barber Brothers neglected to safeguard the work in any manner.
Thirdly, a condition of indemnity is “because of any act or omission, neglect, or misconduct of said contractor”. In this case, the damage sustained did not arise out of any neglect in the performance of the work to be undertaken by Barber Brothers in fulfilling its duties under its contract. The duty was plainly that of the Parish not Barber Brothers.
Appellant contends that it had no duty to erect a stop sign since the street *145 was still under construction. Testimony revealed that at the time of the accident there was considerable traffic on Choctaw Drive and city officials including inspectors and on the site personnel were aware of the use of Choctaw by motorists. Further, it was revealed that the portion of Choctaw in question was nearly completed, and was so complete that it had enough traffic to warrant the placement of signs by the City, even though in inadequate, improper and insufficient locations. Although construction may not have been entirely completed the parish had a duty to sign the streets properly when substantial traffic was proceeding thereon.
We find the amount of damages awarded by the trial court to be within the limit of his discretion.
Judgment affirmed.