441 So.2d 330 (1983)
Pamela Holt, wife of/and Steven D. HOLT
v.
Marilyn D. SINGLETARY, Woodson Singletary, and State Farm Mutual Auto Insurance Company.
No. 83 CA 410.
Court of Appeal of Louisiana, Fifth Circuit.
November 9, 1983.
*331 Robert A. Caplan, Lewis & Caplan, P.C., New Orleans, for plaintiff-appellee.
Robert L. Oliver, Senior Asst. Gen. Counsel, Dept. of Transp. and Development, Baton Rouge, for defendant-appellant.
Before KLIEBERT, BOWES and DUFRESNE, JJ.
KLIEBERT, Judge.
The State of Louisiana, through the Department of Transportation and Development (hereinafter the Department) brings this suspensive appeal from a judgment for $55,000.00 in favor of Pamela Holt, plaintiff, for damages received in a two-car, right-angle collision[1] at the intersection of *332 Louisiana Highways 1090, 41 and 3081 in Pearl River, Louisiana. Two questions are presented on appeal: (1) whether the failure of the Department to have the intersection controlled by a traffic light was the substantial cause in fact of the accident, and (2) whether the Department is entitled to a reduction in judgment of the amount received in settlement by the plaintiff from co-defendants (the operator and insurer of the other vehicle involved in the accident) and her insurer. The trial judge found the Department was negligent because it did not properly perform the engineering study to determine the need for a traffic control signal at the intersection and its failure to have the intersection controlled by a traffic light was the substantial cause in fact of the accident. He refused, however, to give the Department credit for the amount received in settlement from the insurer and operator of the other vehicle involved in the accident. We affirm.
Originally, the suit was filed against Marilyn and Woodson Singletary and their insurer, State Farm Insurance Company (the operator, owner and insurer of the other vehicle involved in the collision), as well as the Department. Subsequently, the plaintiff amended her petition to include the Department as a co-defendant. In turn, the Department filed a third-party claim against the Singletarys and their insurer. Prior to trial, plaintiff effected a settlement with the Singletarys and their insurer for $10,000.00. Then, on a motion for summary judgment, the trial court dismissed the Department's third party claim against the Singletarys and their insurer. The judgment granting the motion shows the Department filed no pleadings in opposition to the motion nor did it appear at the hearing on the motion for a summary judgment. The case then proceeded to trial with the Department as the sole defendant under the plaintiff's petition as amended.
The accident occurred on December 22, 1979 at the intersection of Louisiana State Highway Nos. 1090, 41 and 3081 (formerly U.S. Highway 11), all under the exclusive jurisdiction, regulation and control of the Department. Plaintiff was driving her 1973 Toyota station wagon in a southerly direction on Highway 3081 towards its intersection with Highways 1090 and 41. After entering the intersection, her vehicle collided with a 1969 Chevrolet being driven in a westerly direction on Highway 1090. At the time the accident occurred, the intersection was controlled by a flashing beacon light.
The plaintiff contends the traffic control signalization at the intersection was inadequate and defective in that (1) it confused motorists approaching the intersection, as evidenced by the excessive accident rate at the intersection, and (2) under the Department of Highway's manual, the intersection should have been controlled by a traffic control signal light (red light), as had been often requested by the officials of the Town of Pearl River. The Department contended the intersection was sufficiently and properly controlled by the flashing beacon light and stop signs and, in support thereof, pointed to a study of the intersection made by the State which showed a traffic control sign light was not warranted at this intersection.
In support of her contentions, the plaintiff produced Mr. Dwaine T. Evans, a consulting traffic engineer (formerly employed by the Department as a traffic engineer) as an expert witness. He testified (his testimony was supported by documentary evidence) that during 1979 nineteen accidents had occurred at the intersection (excluding the accident here sued on), of which twelve were right-angle collisions. Additionally, he found seven right-angle collisions had occurred during 1978. Also, his investigation showed the records of the Department reflected six of the 1978 right-angle collisions and seven of the 1979 right-angle collisions. In his expert opinion, a higher level of control at the intersection, such as a traffic control signal light, was warranted and would have served to reduce the number of accidents.
Evidence was introduced, in part through plaintiff's witnesses, and in part through defendants' witnesses, showing the Town of *333 Pearl River had, verbally and by letter, requested the Department to provide better signalization at the intersection on several occasions, without much success. Finally, in July of 1979, the Department did make a study of the intersection and concluded a traffic control signal light was not warranted.
According to the Department's witness, Mr. Adam, the conclusion that a traffic signal light was not warranted was predicated on his findings that only one right-angle collision had occurred at the intersection in each of the years 1975, 1976 and 1977, and two in the first six months of 1978, and that the intersection was used by an average of 265 vehicles per hour. The traffic density study was made on one day between the hours of 8:00 o'clock A.M. and 12:00 o'clock A.M., and from 1:00 o'clock P.M. to 5:00 o'clock P.M.
The Uniform Traffic Control Device Manual,[2] adopted by the Department, warrants the installation of a traffic control signal light when:
"4C-8 Warrant 6, Accident Experience
The Accident Experience Warrant is satisfied when:
1. The Adequate trial of less restricted remedies with satisfactory observance and enforcement has failed to reduce the accident frequency and
2. Five or more reported accidents, of types susceptible to correction by traffic signal control, have occurred within a 12-month period, each accident involving personal injury or property damage to an apparent extent of $100 or more; and
3. There exists a volume of vehicular and pedestrian traffic not less than 80 percent of the requirements specified either in Minimum Vehicular Volume Warrant, the Interruption of Continuous Traffic Warrant, or the Minimum Pedestrian Volume Warrant; and
4. The signal installation will not seriously disrupt progressive traffic flow."
Other sections of the manual recommend that the traffic density determination be made over a sixteen hour period in order to reach the peak morning traffic, the peak noon traffic, and the peak evening traffic. Although the manual provides standards for design and application of traffic control devices, it is not a substitute for engineering judgment. In and of itself, therefore, although a control device may be warranted under the guidelines prescribed by the manual, there is no legal requirement that one be installed.
The plaintiff's expert considered the Department's study totally insignificant because it failed to include the accident experience for the year immediately preceding the study and the traffic density study which was made, was made at a time which excluded the peak hours of vehicular use of the intersection. In his opinion, a study properly done would have easily led to the conclusion he made, i.e., a traffic control signal was warranted and necessary to reduce the accident density at the intersection.
Under a theory of negligence or of duty risk, the law regarding the Department of Transportation's duty to travelers on this State's highways is well settled. The Department has a duty to construct and maintain the highways in a condition reasonably safe for persons using ordinary care and prudence. The Department will be held liable when the evidence shows the condition complained of was patent or obviously presented an unreasonable risk to prudent drivers and the Department had actual or constructive notice of the defect and failed to correct it within a reasonable time. Chiasson v. Whitney, 427 So.2d 470 (La.App. 5th Cir.1983); Usry v. Louisiana Department of Highways, 402 So.2d 240 (La.App. 4th Cir.1981); U.S.F. & G. Co. v. State Department of Highways, 339 So.2d 780 (La.1976).
Under a theory of strict liability prescribed by La.C.C. Article 2317, for the *334 plaintiff to recover from the Department, he must show that the thing which caused the damage was (1) in the care or custody of the defendant, (2) it had a vice or defect which caused an unreasonable risk or injury to another, and (3) the injury complained of was caused by the vice or defect. Chiasson v. Whitney, supra; Shipp v. City of Alexandria, 395 So.2d 727 (La.1981).
Here the trial judge found the Department was negligent in the performance of its engineering study and in its failure to have the intersection controlled by a traffic control signal light and that negligence was the proximate cause of the collision. From our review of the record we cannot say the trial judge committed manifest error. The evidence shows the Department breached its duty to properly control the intersection and in so doing created an unreasonable risk to prudent drivers using the intersection. Further, the Department was informed of the risk by the Town officials and compounded its negligence by making an inadequate study; therefore, it failed to correct the risk within a reasonable time of being informed of its existence.
On the next issue, the Department contended it is entitled to a reduction in the judgment because of the settlement the plaintiff made with the operator, owner and insurer of the other vehicle involved in the accident. It is well settled that when a plaintiff settles with a co-defendant before trial, the defendant is not entitled to a reduction in judgment unless he has proven, at trial, negligence on the part of the released co-defendant. Raley v. Carter, 412 So.2d 1045 (La.1982); Harvey v. Travelers Insurance Co., 163 So.2d 915 (La.App. 3rd Cir.1964).
Therefore, in support of its contention, the Department argues the operator of the other vehicle involved in the accident was negligent and points to an answer to interrogatories filed by State Farm Mutual Automobile Insurance Company, the insurer of the Singletary vehicle, in answer to the plaintiff's interrogatories, as proof of the negligence. The interrogatory referred to is not in evidence in this case, nor is there anyone else's version of the accident contained in the record, except that of the plaintiff, which is quoted from her testimony as follows:
"Q. And what happened in that accident?
A. I was going through, well getting ready to go through the caution light. And I guess when I got about midway I noticed this car dart in front of me and I hit it."
Thus, there is nothing in the record from which we can conclude the operator of the Singletary vehicle was negligent; nor is there anything in the record or in brief to support counsel for the Department's argument that there was an agreement or that the parties intended to enter into an agreement under which plaintiff's recovery from the Department would be limited to one-half of any judgment obtained against them.
For the foregoing reasons, therefore, we affirm the trial court's judgment. Each party to bear his own cost of the appeal.
AFFIRMED.
NOTES
[1] A right-angle collision is one in which the vehicles involved in the collision enter the intersection at an approximate 90 angle from one another.
[2] This is a manual published by the U.S. Department of Transportation which has been adopted by all fifty states.